UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SAMUEL SANTELLAN,

        Plaintiff,                                    Hon. Ellen S.  Carmody

v.

                                                    Case No. 1:15-cv-974

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

**OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (ECF No. 9).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## PROCEDURAL POSTURE

Plaintiff was 48 years of age on his alleged disability onset date.  (PageID.218).  He successfully completed high school and previously performed the following work: extrusion/press helper, production/automobile assembly, press operator, and construction/roofer.  (PageID.81).  Plaintiff applied for benefits on February 7, 2013, alleging that he had been disabled since August 16, 2012, due to broken left ankle, right knee injury, right ankle injury, left shoulder injury, lower back pain, depression, neck injury, and arthritis.  (PageID.218-28, 265).  Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (PageID.139-217).  On May 6, 2014, Plaintiff appeared before ALJ Luke Brennan with testimony being offered by Plaintiff and a vocational expert.  (PageID.88-137).  In a written decision dated May 27, 2014, the ALJ determined that Plaintiff was not disabled.  (PageID.71-82).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (PageID.24-29).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v.*

---

[1]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) separation of the left AC joint; (2) multiple arthralgias; (3) left knee chronic ACL insufficiency; (4) status post painful hardware removal of the right knee; (5) chronic right ankle pain after undergoing open reduction internal fixation (ORIF); (6) degenerative disc disease at C4-5 and C5-6; and (7) depressive disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.73-76).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday he can stand/walk and sit for 6 hours each; (3) he can engage in frequent reaching with his left upper extremity; (4) he can frequently climb ramps and stairs; (5) he can occasionally climb ladders, ropes, and scaffold; and (6) he is capable of performing simple, routine tasks. (PageID.76).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis

added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 21,000 jobs in the state of Michigan, and approximately 1,150,000 jobs nationwide, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.127-34).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.       **ALJ's Reference to Another Claimant**

In a single paragraph of his detailed 12-page opinion, the ALJ mistakenly made reference to a claimant other than Plaintiff.  (PageID.76-77).  Plaintiff argues that this oversight mandates that this matter be remanded.  The Court disagrees.  The paragraph in question does not concern the ALJ's analysis of the evidence or any legal issue.  Instead, it is merely an introductory paragraph which sets the stage for the ALJ's discussion of the evidence.  This does not make the oversight any less egregious, but contrary to Plaintiff's assertion it does not render the ALJ's decision invalid.

The ALJ correctly identified Plaintiff throughout the remainder of the opinion.  The

ALJ's discussion of the evidence was limited to the evidence in the present record. Thus, the error

in question is simply the type of mistake that occurs when word processing software is utilized to

prepare opinions. It is the same type of error that this Court - and Plaintiff's counsel - have made

from time to time. Plaintiff has identified absolutely no authority to support his call for remand.

The Court finds remand is not appropriate. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)

(recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming

"impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528,

535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ

unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)

("no principle of administrative law or common sense requires us to remand a case in quest of a

perfect opinion unless there is reason to believe that the remand might lead to a different result").

Accordingly, this argument is rejected.

## II.          Plaintiff's RFC

As noted above, the ALJ determined that Plaintiff was capable of performing a

limited range of light work. Plaintiff argues that the ALJ's determination in this regard is deficient.

Specifically, Plaintiff challenges the determination that he can stand/walk for six hours during an

8-hour workday. With respect to this particular issue, the ALJ stated:

> As for the claimant's orthopedic and pain-related complaints, the
> record reveals that the claimant, for the most part, has done relatively
> well in spite of his surgical history. For example, although the
> claimant underwent right ankle ORIF in 2008 (Exhibits 2F/2, 16F)
> and recent x-rays revealed broken hardware as well as synasotsils and
> mild degenerative changes (Exhibit 15F/6), the claimant's orthopedist
> did not recommend surgery as the claimant demonstrated only mildly
> decreased range of motion (as compared to the left), good function,

and only minimal symptoms (Exhibit 15F/7-10).  Similarly, it was noted that the claimant did not exhibit any pain behaviors in connection with his right ankle during the course of his consultative examination (Exhibit 3F/l-2).  And although the claimant underwent surgical removal after experiencing pain related to hardware in his right knee for several months (Exhibits 14F/1-6, 15F/4-5, 7), eight days post-surgery the claimant was ambulating well without crutches and presented with full strength (Exhibit lSF/1-3).  Moreover, even prior to undergoing knee surgery and in spite of alleged chronic right ankle pain as well as diffuse body pain, the claimant presented with only minimal findings, including associated tenderness and some localized swelling in his knee (see, e.g., Exhibits 3F; 11F/3-4), but oft presented with full sensation and strength, no gait difficulties, and no obvious deformity (Exhibits 2F/9-12, 3F/2, 11F/10-14, 12F/1).

(PageID.77-78).

The ALJ's assessment of the evidence is accurate and consistent with the record.  The only evidence which undermines the ALJ's assessment is the opinion offered by Dr. Lindberg which, as discussed below, was properly discounted.  Plaintiff bears the burden at step four of the sequential process to establish that he is limited to the extent alleged.  Plaintiff has failed to do so.  The ALJ's RFC determination is supported by substantial evidence.  Accordingly, this argument is rejected.

**III.        Dr. Lindberg's Opinion**

On April 25, 2014, Plaintiff's treating physician, Dr. Kurt Lindberg, offered a sworn statement in response to questions posed by Plaintiff's counsel.  (PageID.411-21).  Dr. Lindberg reported that Plaintiff was limited to a greater extent than the ALJ recognized.  Specifically, the doctor reported that Plaintiff was unable to sit or stand for six hours during an 8-hour workday and, moreover, was unable to lift more than 10 pounds.  (PageID.415).  The doctor also reported that Plaintiff was "severely depressed." (PageID.416).  The ALJ found the doctor less than credible and,

therefore, afforded his opinions "little weight." (PageID.78-79).  Plaintiff argues that he is entitled

to relief because the ALJ failed to articulate good reasons for discounting Dr. Lindberg's opinions.

The treating physician doctrine recognizes that medical professionals who have a

long history of caring for a claimant and his maladies generally possess significant insight into his

medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must,

therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion

"is not inconsistent with the other substantial evidence in the case record."  *Gayheart v.*

*Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. §

404.1527).

Such deference is appropriate, however, only where the particular opinion "is based

upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at

*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is

unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991

WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*,

839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284,

286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ

must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be

"supported by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician

rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v.*

*Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the

physician's opinions "are not well-supported by any objective findings and are inconsistent with

other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the

ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

In support of his decision to discount Dr. Lindberg's opinions, the ALJ stated the

following:

> During the course of questioning by the claimant's attorney, Dr.
> Lindberg stated that the claimant was primarily disabled on account
> of pain as well as mental issues. Dr. Lindberg also submitted two
> separate letters indicating that the claimant was disabled due to his
> worsening condition (Exhibits 7F/3-4). As for his orthopedic
> problems, he noted that the claimant's most persistent problem was
> related to his right ankle (Exhibit 5F/3). However, as noted above,
> and after an orthopedic evaluation, surgery was not recommended the
> claimant demonstrated only mildly decreased range of motion (as
> compared to the left), good function, and only minimal symptoms
> (Exhibit 15F/7-10).
>
> And even in spite of alleged chronic pain related thereto Dr.
> Lindberg, who asserted that the claimant's ankle pain would result in
> significant limitations regarding the claimant's ability to walk and
> stand (Exhibit 5F/5), did not note any issues in terms of the
> claimant's gait. To the contrary, a review of the objective medical
> evidence of record (including Dr. Lindberg's own records),
> documents no significant difficulties in terms of ambulation or
> strength or sensation (see, e.g., Exhibits 3F/1-2, llF/7, 12F/1, 15F/1).
> And while Dr. Lindberg has asserted that the claimant's conditions
> have worsened over the past 18 months (Exhibit 7F/3-4), a
> corresponding review of treatment records actually note, on several
> occasions, that the claimant's condition was improving.
>
> Dr. Lindberg's sworn statement also suggests work preclusive mental

limitations.  This assessment is not explained by Dr. Lindberg, nor is it supported by the evidence of record, which as described above, generally document medication efficacy in terms of the claimant's mental health issues (see, e.g., Exhibits 2F/4-5, 13-15, llF/6-7, 8-9). The claimant's representative has attempted to bolster Dr. Lindberg's assessment by pointing out that during the course of the sworn statement, Dr. Lindberg believed that while undiagnosed, the claimant had a personality disorder, and had a very difficult time getting along with others and was unaware that his own father, who lived just 5 miles away from the claimant, was dying (Exhibits l 5E/2, SF /6-7).  Rather than asking open-ended questions regarding the signs and symptoms that Dr. Lindberg himself had observed, the claimant's representative also inappropriately interjected his own experience with the claimant in an attempt gain Dr. Lindberg's support (Exhibit 15E/3-4).  It is also clear that Dr. Lindberg and the claimant's representative had an off-the-record discussion regarding the amount of time the claimant would miss work (reportedly more than 2 days per month) (Exhibit 5F/9, 11, 6-9).  Not only is it unclear why this discussion occurred off the record, but it raises significant questions on whether Dr. Lindberg based his testimony on his own assessment of the claimant or whether his disabling conclusion was based on coaching and subsequently stating what he believed the claimant's representative needed or wanted to hear.

(PageID.78-79).

The ALJ articulated specific reasons, which are more than supported by the record, for discounting the doctor's opinion.  As the ALJ correctly observed, the medical evidence, including Dr. Lindberg's own treatment notes, do not support his opinions.  A review of the doctor's testimony makes clear that his opinions were based too a great extent, if not almost exclusively, on Plaintiff's subjective allegations rather than the results of examination or objective testing. Furthermore, while Plaintiff takes great issue with the ALJ's observations regarding the manner in which the doctor was questioned, the ALJ's assessment is consistent with the record.  In sum, the ALJ's decision to discount Dr. Lindberg's opinion is supported by substantial evidence.

IV.          **Plaintiff's Credibility**

In discounting Plaintiff's credibility, the ALJ considered Plaintiff's failure to participate in mental health treatment as well as his alcohol abuse. (PageID.77). Plaintiff argues that it was improper for the ALJ to consider his alcohol abuse when evaluating his credibility. Plaintiff further argues that before discounting his testimony for failure to obtain treatment, the ALJ was required to determine whether his failure to obtain treatment was the result of an inability to pay for such. The Court is not persuaded.

Plaintiff sought mental health treatment from a Michigan Community Mental Health Center which is obligated to provide mental health services regardless of the recipient's ability to pay. *See* Mich. Comp. Laws § 330.1810; *see also*, Free or Low Cost Mental Health Care, available at http://www.michigan.gov/mdhhs/0,5885,7-339-71547_2943_52115-203750--,00.html (last visited on July 9, 2016) (noting that when receiving treatment from a Community Mental Health Center, "[y]ou pay what you can afford based on your income"). Plaintiff was approved for services through Community Mental Health. (PageID.493). Thus, to the extent Plaintiff failed to seek treatment such was not due to an inability to pay for such. As for the ALJ's reference to Plaintiff's alcohol use, such has long been held to be appropriate. *See, e.g., Arnone v. Commissioner of Social Security*, 2012 WL 7658385 at *8 (W.D. Mich., Sept. 26, 2012) (collecting cases). Accordingly, this argument is rejected.

**V.**          **Plaintiff is Not Entitled to a Sentence Six Remand**

Plaintiff submitted to the Appeals Council evidence which was not presented to the

ALJ.  (PageID.32-64).  The Appeals Council received the evidence, but nevertheless declined to

overturn the ALJ's determination.  This Court, however, is precluded from considering the evidence

in question.  In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth

Circuit indicated that where the Appeals Council considers new evidence that was not before the

ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider

such evidence when adjudicating the claimant's appeal of the ALJ's determination.  *Id.* at 148; *see*

*also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that

good cause existed for not presenting it to the ALJ, the Court can remand the case for further

proceedings during which this new evidence can be considered.  *Cline*, 96 F.3d at 148.  To satisfy

the materiality requirement, Plaintiff must show that there exists a reasonable probability that the

Commissioner would have reached a different result if presented with the new evidence.  *Sizemore*

*v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).  Plaintiff bears the

burden of making these showings.  *See Hollon ex rel. Hollon v. Commissioner of Social Security*,

447 F.3d 477, 483 (6th Cir. 2006).

In assessing the evidence in question and declining to reverse the ALJ's decision, the

Appeals Council stated that:

> This new information is about a later time.  Therefore, it does not
> effect the decision about whether you were disabled beginning on or
> before May 27, 2014 [the date of the ALJ's decision].

(PageID.25).

The Court agrees with the assessment by the Appeals Council.  The evidence in question reveals that Plaintiff suffered a knee injury several months *after* the ALJ's decision. (PageID.32-53).  The evidence also contains the results of a psychological consult examination conducted May 6, 2015, almost one year after the ALJ's decision.  (PageID.60-64).  The examiner first met with Plaintiff on this date, thus his conclusions, even assuming they are credible, cannot reasonably apply to the time period prior to the ALJ's decision.  Accordingly, Plaintiff is not entitled to a Sentence Six remand for the consideration of this evidence.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  The Court further finds that appeal of this matter would not be taken in good faith.  *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3).  A judgment consistent with this opinion will enter.

Date:  August 5, 2016                                         /s/ Ellen S. Carmody
                                                              ELLEN S. CARMODY
                                                              United States Magistrate Judge